IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang

Civil Action No. 23-cv-01420-NYW

DAVID THOMAS RENNER,

    Applicant,

v.

THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

    Respondent.

## ORDER ON APPLICATION FOR WRIT OF HABEAS CORPUS

This matter is before the Court on the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (the "Application" or "Habeas Application"), [Doc. 1], in which Applicant David Thomas Renner ("Applicant" or "Mr. Renner"), proceeding pro se, challenges the validity of his convictions in El Paso County District Court, case number 17CR1259. After reviewing the Parties' briefs, the record before the Court, and the applicable law, the Court respectfully concludes Mr. Renner is not entitled to relief.

## BACKGROUND

Applicant is a Colorado parolee serving his parole out of state. [Doc. 9-2]. Mr. Renner is a computer programmer who started a company, CDS Health Tech, Inc. ("CDS"), to develop and implement software for the healthcare industry. [Doc. 9-4 at 2]. Between 2010 and 2014, he solicited investments in the company. [*Id.*]. In his investment pitches, Mr. Renner projected substantial returns, but also neglected to inform some investors that their investment funds would be used for Mr. Renner's personal

expenses, as opposed to solely for "business purposes," and told one investor prematurely that testing on the software had begun. [*Id.* at 2, 19–25]. Additionally, Mr. Renner failed to mention that he had been previously convicted of fraud and theft, that he owed over half a million dollars in restitution to the victims of those crimes, and that he was still on probation. [*Id.* at 2]. As a result of his efforts, Mr. Renner obtained nearly $100,000 from four investors, none of whom ever saw a return on their investment. [*Id.* at 2–3 & n.1].

A jury ultimately convicted Mr. Renner of three counts of securities fraud in violation of Colo. Rev. Stat. § 11-51-501(1)(b), which prohibits any person, in connection with the offer or sale of any security, directly or indirectly, from making "any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading." These convictions were based on Mr. Renner's solicitation of three separate investors: Larry Skinner ("Mr. Skinner"), Frank Mussato ("Mr. Mussato"), and Dennis Westmoreland ("Mr. Westmoreland"). [Doc. 9-4 at 3–4].

On direct appeal, a division of the Colorado Court of Appeals ("Court of Appeals") affirmed the judgment in part and reversed it in part, finding, as relevant here, that the evidence was sufficient to support Mr. Renner's convictions for defrauding Messrs. Skinner and Mussato, but insufficient to sustain the third conviction for defrauding Mr. Westmoreland. [*Id.* at 19–42, 47]. The Colorado Supreme Court subsequently denied Mr. Renner's Petition for Writ of Certiorari without any explanatory opinion. [Doc. 9-5].

Thereafter, Mr. Renner filed the instant Habeas Application in federal court, in which he asserts that the evidence presented at trial was constitutionally insufficient to

2

support his two remaining convictions for securities fraud. *See generally* [Doc. 1]. Respondent, the Attorney General for the State of Colorado, ("Respondent" or the "Attorney General") has filed an Answer to the Application, [Doc. 21], to which Mr. Renner has replied, [Doc. 25]. Accordingly, this matter is fully briefed and ripe for this Court's review.

## STANDARDS OF REVIEW

### I. Pro se Litigants

Because Mr. Renner is proceeding without an attorney, the Court liberally construes his filings. *See Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). The Court, however, may not act as Mr. Renner's advocate, *see Hall*, 935 F.2d at 1110, and observes that he is bound by the same procedural rules and substantive law as a represented party, *Garret v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).

### II. Application for a Writ of Habeas Corpus

The Antiterrorism and Effective Death Penalty Act of 1996 provides that a writ of habeas corpus may not be issued with respect to any claim that was adjudicated on the merits in state court unless that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Mr. Renner bears the burden of proving his entitlement to relief under § 2254(d). *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

As the United States Court of Appeals for the Tenth Circuit ("Tenth Circuit") has

explained, § 2254(d) sets out a "difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Black v. Workman*, 682 F.3d 880, 892 (10th Cir. 2012) (quoting *Cullen*, 563 U.S. at 181)). This inquiry is straightforward when "the last state court to decide a prisoner's federal claim explains its decision on the merits in a reasoned opinion." *Wilson v. Sellers*, 584 U.S. 122, 125 (2018). In such cases, the "federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable." *Id.* When, as here, the last state court decision on the merits "does not come accompanied with those reasons . . . the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale [and] presume that the unexplained decision adopted the same reasoning." *Id.*[1]

Under § 2254(d)(1), a state court's decision is contrary to clearly established federal law if the court "applies a rule that contradicts the governing law set forth in Supreme Court cases or confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from that precedent." *Smith v. Duckworth*, 824 F.3d 1233, 1241 (10th Cir. 2016) (quotation omitted). A state court decision constitutes an unreasonable application of federal law if

---

[1] This presumption may be rebutted "by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed." *Wilson*, 584 U.S. at 125–26. Mr. Renner does not argue or show here, however, that the Colorado Supreme Court relied on different grounds from the Court of Appeals in denying Mr. Renner's Petition for a Writ of Certiorari and instead takes issue only with the Court of Appeals's findings and reasoning. *See generally* [Doc. 1; Doc. 25].

4

it "correctly identifies the governing legal rule but applies it unreasonably to the facts." *Id.* (quotation omitted). When determining whether a state court has complied with federal law, federal courts "measure the decision against the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71–72 (2003). This inquiry is limited "to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions." *Id.* at 71 (quotation omitted). The Tenth Circuit has emphasized that "only the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." *Maynard v. Boone*, 468 F.3d 665, 671 (10th Cir. 2006); *see also Harrington v. Richter*, 562 U.S. 86, 102 (2011) (stating "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable").

"Review of a state court's factual findings under § 2254(d)(2) is similarly narrow." *Smith*, 824 F.3d at 1241. As the Tenth Circuit has explained, "the sufficiency of the evidence to sustain a conviction is not subject to federal habeas review unless the conviction is so totally devoid of evidentiary support as to raise a due process issue." *Mathis v. Colorado*, 425 F.2d 1165, 1166 (10th Cir. 1970) (cleaned up). A federal court "will not conclude a state court's factual findings are unreasonable merely because we would have reached a different conclusion in the first instance." *Smith*, 824 F.3d at 1241 (quotation omitted). Rather the reviewing court must presume the state court's factual findings, both implicit and explicit, are correct, and the applicant bears the burden of rebutting that presumption by clear and convincing evidence. *See id.*; *see also* 28 U.S.C. § 2254(e)(1); *Al-Yousif v. Trani*, 779 F.3d 1173, 1181 (10th Cir. 2015) (presumption applies both to state trial court findings and to findings made by state appellate courts

5

based on the trial record); *see also Ellis v. Raemisch*, 872 F.3d 1064, 1071 n.2 (10th Cir. 2017) (presumption applies to implicit factual findings). If, however, the applicant can show that the state court "plainly misapprehended or misstated the record in making [its] findings, and the misapprehension goes to a material factual issue that is central to [his] claim, that misapprehension can fatally undermine the fact-finding process, rendering the resulting factual finding unreasonable." *Smith*, 824 F.3d at 1241 (cleaned up). Accordingly, a federal habeas applicant is entitled to relief under § 2254 if "it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324 (1979).

## ANALYSIS

In his Habeas Application, Mr. Renner argues that the evidence at trial was constitutionally insufficient to sustain his convictions for defrauding Messrs. Skinner and Mussato. To assess the sufficiency of the evidence, the reviewing court must first identify the elements of the offense and then determine whether the evidence suffices to establish each element. *Anderson-Bey v. Zavaras*, 641 F.3d 445, 448 (10th Cir. 2011). Importantly, "[s]tate law governs what the elements are." *Id.* Even if the federal court believes that the state court misinterpreted state law in upholding a defendant's conviction, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Id.* (quoting *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991)). In contrast, "the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law." *Coleman v. Johnson*, 566 U.S. 650, 655 (2012) (per curiam).

***Elements of the Offense.*** As noted above, Mr. Renner was convicted of violating § 11-51-501(1)(b) of the Colorado Securities Act ("CSA"), which makes it

6

unlawful for any person in connection with the offer or sale of any security, directly or indirectly, "[t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading."  The Colorado Supreme Court has explained that under the CSA, a misrepresented or omitted fact is considered "material" if "there is a substantial likelihood that a reasonable investor would consider the matter important in making an investment decision."  *Goss v. Clutch Exch., Inc.*, 701 P.2d 33, 36 (Colo. 1985).  In other words, a fact is "material" if "a reasonable investor would regard it as significantly altering the 'total mix' of information made available."  *Id.* (quoting *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976)).

As to Mr. Renner's conviction for defrauding Mr. Skinner, although the Court of Appeals found that Mr. Renner had not made any untrue statements of material fact and that his optimistic forecasts were nonactionable puffery, the Court of Appeals concluded that Mr. Renner's failure to tell investors that their investments would be used for personal expenses constituted a misleading omission of material fact in light of Mr. Renner's statement that investment funds would be used for "business purposes."  [Doc. 9-4 at 27–31].  This omission, the Court of Appeals concluded, "was material because there is a substantial likelihood that a reasonable investor would consider the fact that forty-three cents of every dollar invested in [CDS] would be used for [Mr.] Renner's personal expenses as important information to have before investing in the company."  [*Id.* at 31].  And by withholding this information, the Court of Appeals found, "[Mr.] Renner misled [Mr.] Skinner about how the funds would be used."  [*Id.*].

Regarding the conviction based on statements made to Mr. Mussato, the Court of

7

Appeals found that, in addition to the material omission regarding spending on personal expenses, Mr. Renner made a material misstatement of fact sufficient to support the conviction when he told Mr. Mussato in late October or early November 2011 that testing on CDS's software was "under way" at a facility in Tennessee, when the evidence showed that, at most, CDS was about to enter into a contract with the Tennessee facility and, by the contract's terms, testing would begin on December 1, 2011, after Mr. Mussato had invested. [*Id.* at 21, 31–32]. Mr. Renner's representation that testing was ongoing, the Court of Appeals found, was not true, and "the jury certainly could have concluded that the misstatement was material because it implied that [CDS]'s software was more developed—i.e., readier for the market—than it actually was, a fact that a reasonable investor would consider important when deciding to invest in the company." [*Id.* at 31–32].

Additionally, in upholding Mr. Renner's convictions, the Court notes that the Court of Appeals found that even assuming his failure to inform potential investors of his criminal background constituted a material omission of fact for purposes of Colo. Rev. Stat. § 11-51-501(1)(b), there was insufficient evidence to demonstrate that disclosing such information was necessary to ameliorate any otherwise misleading statement. [*Id.* at 29].

Mr. Renner challenges the sufficiency of the evidence supporting his convictions on two grounds.

***Personal Expenses.***   First, Applicant contends that the Court of Appeals erred in concluding that Mr. Renner's failure to inform investors that their investment funds would be used for personal expenses was an omission of material fact necessary in order to make his statement about funds being used for "business purposes" not misleading. [*Id.*

8

at 31]; *see also* [Doc. 1 at 8–9; Doc. 1-1 at 9–11].   According to Mr. Renner, the Court of Appeals's holding that his "failure to tell investors that money would be spent on 'personal expenses' was fraud even though spending the same money on 'salary' would not have been fraud" conflicts with decisions in which the Colorado Supreme Court has held that "'salary' may be paid 'in the form of living expenses,'" [Doc. 1-1 at 9–10 (quoting *Skyland Food Corp. v. Meier*, 382 P.2d 996, 998 (Colo. 1963)]; *see also* [Doc. 1 at 8–9; Doc. 25 at 1–4], and that with respect to securities fraud, substance matters more than form, [Doc. 1-1 at 10 (collecting Colorado Supreme Court and Court of Appeals cases)].   Citing testimony from the prosecution's expert witness, who opined that it was not illegal to spend on personal items directly from a company account instead of withdrawing the funds as a salary, *see* [Doc. 1-1 at 11 n.4], Mr. Renner contends that because spending investor funds on personal expenses was "noncriminal behavior," it was not necessary for him to disclose such information to investors in order to make his statement that the funds would be used for "business purposes" not misleading under the CSA.   *See* [Doc. 1 at 7–9; Doc. 25 at 1–5].

Mr. Renner impermissibly seeks to use his Habeas Application "to press his preferred interpretation of [Colorado] law" by characterizing his arguments as factual challenges under *Jackson*.   *See Anderson-Bey*, 641 F.3d at 448–50 (collecting cases). Mr. Renner does not challenge the Court of Appeals's finding that the jury could have concluded his testimony that he had told investors that their funds would be used for "business purposes" was misleading, nor does he point to any evidence that he did indeed explain to investors that their funds would be put towards his personal expenses.   *See* [Doc. 9-4 at 30–31]; *see generally* [Doc. 1; Doc. 1-1; Doc. 25].   Rather, his dispute

9

concerns whether his payment of personal expenses directly out of his business account, without advising investors of such, could be considered "misleading" under the CSA, when he could have paid for the same personal expenses out of a salary, a legitimate and permissible use of investor funds.

This legal question is one that Mr. Renner litigated and lost in state court, *see* [Doc. 9-4 at 31 ("[Mr.] Renner argues that salaries are a legitimate business expense, so he did not mislead investors. While we agree that salaries are a legitimate business expense, it appears that, instead of drawing a salary, [Mr.] Renner used [CDS's] bank accounts as his personal bank account . . . .")]; *see also* [Doc. 1-1 at 9 (stating that differentiating between "personal expenses" and "salary" is a question of law)], and "[h]e cannot obtain a second opinion on the meaning of state law through the maneuver of making a claim under *Jackson*," *Anderson-Bey*, 641 F.3d at 449 (cleaned up). In rejecting Mr. Renner's argument, the Court of Appeals implicitly concluded that, under state law, the use of investor funds for personal expenses, while legal if taken in the form of a salary, can nevertheless be materially misleading and give rise to liability for securities fraud if the defendant makes statements about using funds for "business purposes" without specifically disclosing that "business purposes" also includes the direct payment for personal expenses. *See* [Doc. 9-4 at 31]; *see also Anderson-Bey*, 641 F.3d at 452–53 (upholding conviction based on state appellate court's implicit interpretation of state law). It is not for this Court to re-examine the Court of Appeals's determination on this state-law question. *See Estelle*, 502 U.S. at 67–68.

Accordingly, the Court holds that Mr. Renner's challenge to the affirmance of his securities fraud convictions based on his failure to inform investors that their funds would

10

be used for his personal expenses is in essence a challenge to the Court of Appeals's interpretation of state law, which this Court may not entertain under § 2254. *Anderson-Bey*, 641 F.3d at 453.

*"Under Way."*   Next, as to his conviction for defrauding Mr. Mussato, Mr. Renner challenges the Court of Appeals's finding that his statement that software testing was "under way" was a material misstatement for purposes of the CSA. *See* [Doc. 1 at 9; Doc. 1-1 at 8 n.1; Doc. 25 at 4–5]. Because the Court does not disturb the Court of Appeals's conclusion that Mr. Renner's material omission regarding spending investors' money on personal expenses was sufficient to support both his convictions, the Court need not address this alternate challenge to Mr. Renner's conviction for defrauding Mr. Mussato. Nevertheless, the Court finds Mr. Renner's argument unavailing.

Mr. Renner has not presented any evidence that conflicts with the Court of Appeals's timeline of events leading up to Mr. Mussato's investment in CDS. *See* 28 U.S.C. § 2254(e)(1). Rather, Mr. Renner agrees that in late October or early November 2011, he met with Mr. Mussato and his wife, and, during the meeting, Mr. Renner told the couple that testing on the software was "under way" at a facility in Tennessee. [Doc. 25 at 4; Doc. 9-4 at 31]. Thereafter, on November 16, 2011, Mr. Renner signed a contract with the Tennessee facility. [Doc. 1-1 at 8 n.1; Doc. 25 at 4]. By the contract's terms, testing was set to begin on December 1, 2011. [Doc. 1-1 at 8 n.1; Doc. 25 at 4]. On November 29, 2011—two days before the start of testing under the contract—Mr. Mussato invested in CDS. [Doc. 1-1 at 8 n.1; Doc. 25 at 4]. Thus, Mr. Renner has not shown by clear and convincing evidence that the Court of Appeals misstated the record in finding that when Mr. Renner met with Mr. Mussato in late October or early November,

11

or even by the time Mr. Mussato invested in CDS, testing was not currently "under way," making his statement to that effect untrue. *See* [Doc. 9-4 at 30]; *see* 28 U.S.C. § 2254(e)(1).

That leaves the Court of Appeals's conclusion that a reasonable juror could have found this "misstatement was material because it implied that [CDS]'s software was more developed—i.e., readier for the market—than it actually was, a fact that a reasonable investor would consider important when deciding to invest in the company." [Doc. 9-4 at 31–32]. Mr. Renner argues that this conclusion lacks a factual basis because there was no evidence introduced at trial that the "complex software could have been significantly modified in [the two days between when Mr. Mussato invested and testing began pursuant to the contract] to make it 'readier for the market.'" [Doc. 1-1 at 8 n.1; Doc. 25 at 4]. That the software had not undergone significant modifications in the interim, however, does not change the fact that a juror could reasonably have found that Mr. Renner's misstatement was material because it implied that the software had undergone more testing—and thus was more developed and closer to being ready for sale—to date than it actually had. *See Jackson*, 443 U.S. at 319 (in evaluating the sufficiency of the evidence to sustain a conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt"). Thus, the Court cannot conclude that the Court of Appeals erred in upholding Mr. Renner's conviction for defrauding Mr. Mussato on this ground, either.

For the foregoing reasons, the Court respectfully concludes that Mr. Renner is not entitled to relief.

## CONCLUSION

Accordingly, **IT IS ORDERED** that:

(1) The Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 [Doc. 1] is **DENIED**;

(2) This action is **DISMISSED with prejudice**;

(3) The Clerk of Court is directed to enter final judgment in this matter; and

(4) There is no basis on which to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c).

DATED:  April 2, 2024

BY THE COURT:

_____
Nina Y. Wang
United States District Judge